Steven BROWN, et al.,
Plaintiffs, Appellees,

v.

FREEDMAN BAKING COMPANY,
INC., et al., Defendants,
Appellants.

No. 85–1598.

United States Court of Appeals,
First Circuit.

Heard Dec. 3, 1986.
Decided Jan. 26, 1987.

Edwin R. Chyten, Chestnut Hill, Mass., for defendants, appellants.

Ann M. Gilmore, with whom Gilmore & Iandoli, Boston, Mass., was on brief, for plaintiffs, appellees.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by defendants-appellants Freedman Baking Co., Inc. (the Company), its president and an owner, Daniel Freedman, and a senior management official, Mildred Lawsky, from a jury award of compensatory and punitive damages for civil rights violations and intentional infliction of emotional distress. We affirm the verdict and award of damages on the civil rights claims but reverse the verdict for intentional infliction of emotional distress.

## I. BACKGROUND

The Company employed Steven Brown at its Faneuil Hall Marketplace facilities first as a store detective, then as night manager, from September 1, 1982, until he was fired on September 12, 1983. During his one-year employment, he received two raises in salary and an extra week's vacation pay. Steven Brown fired three black employees, including part-time sales clerks Tanya Brown and Donna Campfield, on Lawsky's instructions. When Campfield subsequently filed a complaint with the Equal Employment Opportunity Commission (the EEOC), Steven Brown agreed to testify on her behalf. He also provided a statement, of which Lawsky was aware, to the EEOC about Campfield's dismissal. A few days later, Freedman fired Steven Brown. In a report to the Division of Employment Security, Freedman opposed Steven Brown's application for unemployment benefits on the ground that he had been fired for misconduct and thus was not entitled to them.

Steven Brown brought a federal civil rights suit in district court, with pendent state claims for intentional infliction of emotional distress and defamation against the Company, Freedman, and Lawsky. His complaint was consolidated with civil rights suits brought by the two former part-time sales clerks, Tanya Brown and Campfield, who alleged that they were fired because they are black. Steven Brown hired the two women in August 1983 and fired them, on Lawsky's order, two weeks later.

Defendants counterclaimed that Steven Brown maliciously circulated trumped-up charges of racially discriminatory practices, that this defamed them, and that the lawsuit was a malicious abuse of process because it was instituted to compel the Company to reemploy Steven Brown, or to get them to withdraw their objection to his claim for unemployment benefits, or for both reasons.

The evidence presented to the jury to substantiate plaintiffs' allegations that Freedman and Lawsky made racially discriminatory management decisions included the following. Lawsky told Steven Brown that too many blacks were working in the Company's main store and this "just doesn't look good." Some employees testified that Lawsky generally treated black employees less favorably than white employees. When Steven Brown complained to Freedman about Lawsky's racially discriminatory actions, Freedman said that if too many blacks work together, "they get arrogant and that's been a problem down there lately." He told Steven Brown to do what Lawsky said or to look for another job. Defendants denied the allegations that plaintiffs were fired for racially discriminatory reasons. They presented evidence that Steven Brown was dismissed because of unsatisfactory performance and because he repeatedly violated company policy and procedures. They also attempted to prove that Tanya Brown and Campfield were fired for legitimate, nondiscriminatory reasons.

After a nine-day trial, the jury awarded plaintiffs a total of $198,000 in damages. The jury awarded Steven Brown $85,000 in damages: $20,000 compensatory, $50,000 punitive, and $5,000 for intentional infliction of emotional distress against the Company, and $2,000 compensatory, $3,000 punitive, and $5,000 for intentional infliction

of emotional distress against Freedman. Steven Brown was awarded no damages from Lawsky and nothing on the defamation count. Tanya Brown was awarded $58,000: $3,600 compensatory and $50,000 punitive against the Company; $300 compensatory and $3,000 punitive against Freedman; and $100 compensatory and $1,000 punitive against Lawsky. Campfield was awarded $55,000: $750 compensatory and $50,000 punitive against the Company; $200 compensatory and $3,000 punitive against Freedman; and $50 compensatory and $1,000 punitive against Lawsky. The jury found against defendants on their counterclaims. Plaintiffs were awarded $67,399.25 for attorney's fees and $2,277.19 for costs. Defendants moved for a new trial on various grounds: the weight of the evidence, the amount of damages, the jury instructions, and evidentiary rulings. The motion was denied and this appeal ensued.

## II. APPELLANTS' ARGUMENTS

There are four issues: (1) whether the jury had been unfairly prejudiced by a statement the judge made during the charge; (2) whether the jury's verdict awarding damages for intentional infliction of emotional distress was proper; (3) whether the damages were excessive or contrary to the jury instructions; and (4) whether the verdicts on the civil rights claims are against the weight of the evidence. Appellees claim that this appeal is frivolous and ask for double costs and attorney's fees.

### A. The Statement to the Jury

Appellants contend that the trial judge unfairly prejudiced the jury while instructing them on the law governing federal civil rights claims. Appellants did not comply with the requirement of Federal Rule of Civil Procedure 51 that a party must make its objections to jury instructions before the jury retires to consider its verdict. Failure to do so ordinarily precludes assigning error on this basis on appeal. "The reason for requiring that objections to instructions be made after the charge and

that they state distinctly the matter to which a party objects and the grounds of the objection is to give the trial judge an opportunity to correct any errors before it is too late." *McGrath v. Spirito*, 733 F.2d 967, 968 (1st Cir.1984); *see Campana v. Eller*, 755 F.2d 212, 216 (1st Cir.1985); *Emery-Waterhouse Co. v. Rhode Island Hosp. Trust Nat'l Bank*, 757 F.2d 399, 411 (1st Cir.1985). We will reverse a judgment in the absence of the required objection only if there is plain error "in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." *Nimrod v. Sylvester*, 369 F.2d 870, 873 (1st Cir.1966); *see Morris v. Travisono*, 528 F.2d 856, 859 (1st Cir.1976).

The allegedly prejudicial statement, made by the court while explaining to the jury what constitutes compensable discriminatory treatment, was: "Unfortunately, it has to be differential treatment. I say unfortunately, because I don't think anybody likes to see it." According to appellants, these two sentences "could easily lead the jury to believe that the defendants did something wrong, that the mere discharge of employees by an employer is what the trial judge doesn't think 'anybody likes to see.'" Therefore, appellants argue, the jury might have held defendants liable simply because they fired plaintiffs. Appellants also argue that the jury could infer from this statement that the judge was disapproving of the requirement that the discharge must have been on the basis of race for the defendants to be held liable.

■ We do not think these two sentences are so misleading that they constitute plain error. We interpret the statement as saying that differential treatment is the basis of liability for discriminatory employment practices, and when there is such treatment, it is unfortunate. Furthermore, "a judgment will not be reversed for error in the jury instructions unless the error is determined to have been prejudicial after review of the record as a whole. Accordingly, we must look to the entire jury charge to determine whether the jury was properly apprised of the legal principles to

be applied in this case." *Almonte v. National Union Fire Ins. Co.,* 787 F.2d 763, 767 (1st Cir.1986). The district court gave clear instructions on the applicable law. It told the jury that for plaintiffs to prevail they must have proved by a preponderance of the evidence that defendants "intentionally discriminated against them on account of race with regard to their employment termination." It instructed the jury that "as long as the reasons for discharging these individuals are nondiscriminatory, you must find for the defendants even if you don't like what happened." Additionally, the court said that this "is not a wrongful termination case. You may, even if you think this was not fair, that it was wrong to do that, that it was not nice, you cannot base your decision on that. It must be race. It must be that blacks get treated differently from whites." Even if the statement were interpreted as appellants urge, the court's detailed and accurate instructions would have cleared up any doubt the jury might have had about the appropriate basis for liability.

### B. The Claim for Intentional Infliction of Emotional Distress

It was not until 1976 that the Supreme Judicial Court of Massachusetts recognized a cause of action for the intentional infliction of emotional distress in the absence of physical injury. *See Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315 (1976). When it did so the court warned that "the door to recovery should be opened but narrowly and with due caution." *Id.* at 144, 355 N.E.2d at 318 (quoting *Barnett v. Collection Serv. Co.,* 214 Iowa 1303, 1312, 242 N.W. 25, 28 (1932)). Liability is restricted to situations in which defendant's "conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community.'" *Id.* at 145, 355 N.E.2d at 319 (quoting Restatement (Second) of Torts § 46 comment d (1965)).

■ The evidence to support the claim of emotional distress was that Freedman told the Division of Employment Security (the DES) that Steven Brown had been fired for wilful misconduct, and this delayed the receipt of benefits and injured him emotionally. Although the complaint alleged that defendants circulated rumors regarding Steven Brown's dismissal, no evidence was presented to support this allegation, and the jury returned a verdict for defendants on the defamation claim, which was based on the alleged rumors. We do not think that Freedman's report to the DES, which delayed but did not prevent the award of benefits, can be characterized as "extreme and outrageous" conduct, especially in the light of Massachusetts statutes requiring that an employer report the circumstances of an employee's dismissal and providing certain protection from civil liability for the information given.

Under the Massachusetts unemployment compensation laws, an individual is not eligible for benefits if "he has left his work ... by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest." Mass.Gen. Laws Ann. ch. 151A, § 25(e) (1982). Employers are required to provide information necessary for determining eligibility and it is intended to be kept confidential. *Id.* §§ 38, 46. Massachusetts law further provides that "[a]ll information transmitted to the director [of the DES] or his duly authorized representative pursuant to [the chapter regarding unemployment compensation] shall be absolutely privileged and shall not be made the subject matter or basis in any action of slander or libel in any court of the commonwealth." *Id.* § 46. *See Arsenault v. Allegheney Airlines, Inc.,* 485 F.Supp. 1373, 1379 (D.Mass.), *aff'd,* 636 F.2d 1199 (1st Cir.1980), *cert. denied,* 454 U.S. 821, 102 S.Ct. 105, 70 L.Ed.2d 93 (1981). An absolute privilege applies even to false and malicious statements. *Ezekiel v. Jones Motor Co.,* 374 Mass. 382, 385, 372 N.E.2d 1281, 1284 (1978).

The purpose of the statute is, of course, to enable employers to respond to inquiries from the DES without fear of subsequent

litigation and liability for statements made to it. We realize that the Massachusetts statute mentions only immunity from libel and slander suits, and does not explicitly protect an employer from liability on an alternative basis such as intentional infliction of emotional distress. We doubt that the purpose of the statute would be served, however, if employers could be held liable for emotional distress based solely on their opposition to an application for unemployment benefits. We leave it, of course, to the Massachusetts courts to decide the sweep of the statute. We are not holding that any response by an employer to a standard DES inquiry, no matter how outlandish, is fair game. In light of the statutory scheme requiring an employer to supply information about an employee's dismissal and providing protection against at least some civil suits, and the strictures the Massachusetts courts have placed on an action for emotional distress, we hold only that the statement made here is insufficient to support a verdict on such a claim.

## C. Excessive Damages

■ Appellants contend that the damages awarded on the civil rights claims are excessive and not in conformity with the trial court's instructions. We rarely will override the jury's judgment on the appropriate amount of damages to be awarded. "[T]he jury's otherwise supportable verdict stands unless [it is] 'grossly excessive' or 'shocking to the conscience.'" *LaForest v. Autoridad de las Fuentes Fluviales de P.R.*, 536 F.2d 443, 447 (1st Cir.1976). We accord broad discretion to the trial court's decision to affirm the jury's award of damages because of that court's greater familiarity with local community standards and with the witnesses' demeanor at the trial. *Fishman v. Clancy*, 763 F.2d 485, 489–90 (1st Cir.1985). We do not find the damages to be either "grossly excessive" or "shocking to the conscience."

■ In awarding compensatory damages, the jury obviously took into account the nature of plaintiffs' jobs and their earnings. The women, fired from part-time sales clerk positions, received only $4,000 and $1,000 in compensatory damages, and Steven Brown, fired from a full-time management position, received $22,000. A damage award tailored in this manner demonstrates that the jury carefully considered the amounts it awarded. In such cases it is particularly inappropriate to override the jury's judgment. *See id.*

■ The jury obviously found that the Company engaged in racially discriminatory employment practices. It assessed $150,000 in punitive damages against the Company, $9,000 against Freedman, and $2,000 against Lawsky. Punitive damages are an appropriate means of punishing such conduct and deterring defendants from future racially discriminatory actions. *See White v. Washington Pub. Power Supply Sys.*, 692 F.2d 1286, 1290 (9th Cir.1982); *Allen v. Amalgamated Transit Union*, 554 F.2d 876, 883–84 (8th Cir.), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). The trial court told the jury that it should award punitive damages if it concluded that "defendants acted in such an outrageous or wanton or oppressive manner in conscious and deliberate disregard for the rights of the others." Defendants did not object to this phraseology or to the submission of the issue to the jury. The jury heard evidence that could have led it to conclude that plaintiffs suffered and lost their jobs because of racial discrimination. It would not be unreasonable for the jury to view such conduct as outrageous and deserving of substantial punitive damages.

■ Neither can the damage award be avoided at this stage of the proceedings by appellants' argument that it is unfair to assess such amounts "against two working people and a small closely-held corporation." Appellants have "failed to create a record of their financial capabilities, and thus we are unable to say that these awards are shocking because of the particular impact on them." *Fishman v. Clancy*, 763 F.2d at 490. We hold, therefore, that the damages were consistent with the jury instructions and not grossly excessive.

### D. Weight of the Evidence

Finally, appellants argue that the jury's verdicts on the civil rights claims for racially discriminatory employment practices are against the weight of the evidence. Appellants are not entitled to retry the facts of their case on appeal. Our review of the jury's verdict is very restricted. We will uphold it "unless the facts and inferences, when viewed in the light most favorable to the party for whom the jury held, point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have arrived at this conclusion." *Chedd-Angier Prod. Co. v. Omni Publications Int'l, Ltd.*, 756 F.2d 930, 934 (1st Cir.1985).

■ We find sufficient evidence in the record to support the jury's verdict on the civil rights claims. The jury heard evidence that Lawsky treated black workers less favorably than white workers; that she wanted them kept away from conspicuous work areas; that Freedman, when confronted with Lawsky's actions, did nothing to correct them; that Tanya Brown and Campfield were identified for discharge based on their race; and, that Steven Brown opposed these practices and was fired for it. Although defendants presented evidence to support their contention that plaintiffs were discharged for legitimate, nondiscriminatory reasons, it is not our function to reassess the credibility of the witnesses or to weigh conflicting versions of the facts. The jury's verdicts on the claims alleging racially discriminatory employment practices are not against the weight of the evidence.

### III. CONCLUSION

For the foregoing reasons, the jury's verdicts and damage awards on the civil rights claims are affirmed; the verdict and damage award on the claim for intentional infliction of emotional distress is reversed, and the case is remanded for an adjustment of the damages.

■ Appellees ask for double costs and attorney's fees on the grounds that this appeal is frivolous, pursuant to Federal Rule of Appellate Procedure 38 and under 42 U.S.C. § 1988. The appeal was obviously not frivolous but, except for the time and expense incurred on the intentional infliction of emotional distress claim, plaintiffs are entitled to recover attorney's fees and costs for this appeal under 42 U.S.C. § 1988.

*Affirmed in part, reversed in part.* Remanded for adjustment of damages and determination of attorney's fees and costs due under 42 U.S.C. § 1988 for this appeal. The award of the district court for attorney's fees and costs incurred below shall remain intact.