Sam v. Creare                           CV-93-054-B    08/18/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


Richard Sam

     v.                                 Civil No. 93-054-B

Creare, Inc.

**O R D E R**


     Richard Sam, a participant in Creare, Inc.'s employee
retirement plan, brings this action pursuant to 29 U.S.C. § 1132
to compel his former employer to produce a variety of corporate
and retirement plan records dating back to 1979.  Creare
presently moves for summary judgment,[1] contending that it has
fully complied with ERISA's disclosure requirements and has no
statutory duty to provide the additional information which Sam

---

[1]In the alternative, Creare's motion also requests that
Sam's suit be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).
Creare argues that Sam's complaint is predicated exclusively upon
state law; that I have previously held that ERISA preempts Sam's
state law claims; and that Sam's complaint consequently fails to
state a viable claim for relief.  While Sam's original complaint
sought relief under New Hampshire's corporate records statute,
N.H. Rev. Stat. Ann. 293-A:52, Sam has subsequently filed an
amended complaint that recasts his allegations as violations of
29 U.S.C. §1021-30.  I therefore deny Creare's motion to dismiss.

seeks.  For the following reasons, I grant Creare's motion in part and deny it in part.

## I.  FACTS

### A.  Overview of the Creare Employee Retirement Plan

Creare, a technological consulting firm based in Hanover, New Hampshire, has an employee retirement plan that is subject to ERISA.  Employees contribute to the plan by electing to have a percentage of their salary placed into a plan account and invested by the plan administrator.  In addition to these "salary reduction" contributions, Creare may make "matching", "profit-sharing" and/or "stock" contributions to the retirement plan out of its current or accumulated net profits.  All three types of employer contributions are made to an employee trust which holds legal title to the shares of stock, invests and manages the trust's other assets, and apportions trust income to individual employee's accounts.  Each type of contribution is discretionary, and over the last several years, Creare's only contributions to the plan have been profit shares.[2]

---

[2]Creare's profit-sharing plan appears to be relatively simple.  For each fiscal year, the company projects what its net profits will be, earmarks a certain amount of these profits as "non-guaranteed compensation", and includes the amount in the

2

**B. Sam's Requests for Information**

Sam left Creare in 1991 but still participates in the company's retirement plan and is the beneficial owner of about 2% of Creare's outstanding stock. In 1992, a Creare official suggested to Sam that his stock interests might be converted to cash and possibly distributed to him. To determine what the fair market value of these shares were, as well as the amount of dividends which he felt Creare's profit-sharing plan had improperly diverted to select Creare stockholders and employees, Sam proceeded to make a series of written requests for information from the Creare officials who doubled as plan trustees.

In July 1992, Sam requested that Creare "describe any dividends received on account of the assets being held for Mr. Sam's benefit, as well as the dividends declared or paid on other shares of Creare, Inc. stock over the last 18 months." He also inquired into defendants' profit sharing plan for the 1992 fiscal year, and stated that "since it appears Mr. Sam has received an inordinately small share of profits for all years he held stock

───────────────

provisional overhead rate it uses on its government contracts. If the money is actually available at year's end, it is then distributed to Creare's employees.

(1979-present), we request copies of the Creare financials for all those years." On September 24, 1993, Sam further requested:

> 1. Full and complete records of actual stock ownership and resulting beneficial stock ownership in Creare . . . for each year from 1979 to date.

> 2. Distribution percentages of the 'set aside earnings' and profits of Creare . . ., which were placed into a pool, known as the profit sharing pool ['pool'], for distribution to the shareholders as determined by the profit sharing committee for each year from 1979 to date.

> 3. Size of the pool for each year from 1979 to date.

> 4. Distribution percentages of the pool, including amounts, to each person receiving a distribution for each of the fiscal years from 1979 to date; and

> 5. Records of all meetings and actions of the trustees of the employee benefit plan from 1979 to date.

Defendants have refused to furnish Sam with any of the above information. Sam brings the present civil enforcement action under 29 U.S.C. § 1132(c) to compel them to do so.

4

## II. <u>Discussion</u>[3]

Creare contends that summary judgment is appropriate because ERISA does not require disclosure of the "sensitive" corporate information that Sam seeks. Sam disagrees. He essentially argues that, because ERISA governs the employee trust which holds his shares of Creare stock, he may use the Act's disclosure requirements to determine whether Creare's officers and directors have improperly distributed corporate profits as profit shares and thereby violated their fiduciary duties to the company's

---

[3]I judge Creare's motion against the following standard. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." <u>Anderson v Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>accord</u> <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990). A "material issue" is one that "affects the outcome of the suit . . . ." <u>Anderson</u>, 477 U.S. at 248. The burden is upon the moving party to aver the lack of a genuine, material factual issue, <u>Finn v. Consolidated Rail Corp.</u>, 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, according the non-movant all beneficial inferences discernible from the evidence. <u>Oliver v. Digital Equip. corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988). If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists. <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1516 (1st Cir. 1983).

stockholders.[4]

Sam brings suit pursuant to 29 U.S.C. § 1132, ERISA's civil enforcement provision. This provision states, in pertinent part

> [a]ny administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Id. at (c)(1). The provision thus requires a plaintiff to establish: (1) that the employer qualifies as a plan administrator; (2) that the plaintiff is a plan participant or beneficiary; (3) that the plaintiff has requested information which ERISA otherwise requires the administrator to produce; and (4) that the employer has refused to produce this information in response to the plaintiff's request. Satisfaction of these four elements triggers the court's discretionary power to penalize the

---

[4]The letters Sam submitted in response to Creare's motion for summary judgment indicate that some of his requests sought information that would assist him in determining the fair market value of his beneficial interest in Creare stock. In the present suit, however, Sam does not allege that he is entitled to disclosure on this basis. I therefore do not address whether ERISA might require disclosure of certain of Creare's financial documents to determine the cash-out value of Sam's beneficial stock interests.

employer and compel disclosure of the withheld information. See Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir. 1987).

Creare does not dispute Sam's satisfaction of the first, second and fourth elements. The plan documents name Creare as the plan administrator, see 29 U.S.C. § 1002(16)(A)(i); Sam is a former employee with vested benefits, see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989); and Creare does not contend that it has complied with any of the requests upon which Sam has brought suit. Consequently, the sole issue before me is whether Sam has adequately requested information which ERISA requires Creare to disclose.

Sam cites 29 U.S.C. §§ 1021-25, the bulk of ERISA's disclosure requirements, as authority for his requests. Enacted to ensure that each individual participant "knows exactly where he stands with respect to [his or her benefits] plan," Firestone, 489 U.S. at 118 (quoting H.R. Rep. No. 533, 93d Cong., 2d Sess. 11 (1973), reprinted in 1973 U.S.C.C.A.N. 4639, 4649), these provisions require that administrators provide participants with information regarding the plan's operation, its annual financial performance, and each participant's total accrued benefits. However, rather than granting participants an unqualified right

7

to discovery, ERISA specifies the form, content and timing of the disclosures to which participants are entitled.

The three primary forms of disclosure required by §§ 1021-25 are the summary plan description, summary annual report, and individual benefits statement. The summary plan description explains how the plan works. See 29 U.S.C. § 1022(a)(1) and (b). The summary annual report and individual benefits statements provide participants with the figures needed to determine whether the plan is working as it should. See Id. at §§ 1024(b)(3), 1023(b)(3)(A) & (B), 1025(a). The administrator must provide copies of these and other, secondary plan documents to participants at various times throughout their participation in the plan, as well as in response to a participant's written request. Id. at § 1024(b). Assuming that the documents provided are "sufficiently accurate and comprehensive" to apprise participants of their rights and obligations under the plan,[5] see § 1022(a)(1), §§ 1201-25 impose no further disclosure obligations on the administrator. Chambless v. Masters, Mates & Pilots Pension, 571 F. Supp. 1430, 1456-57 (S.D.N.Y. 1983).

---

[5]Sam separately alleges that any documents that Creare has provided are incomplete and misleading. As Sam bases this allegation on Creare's failure to respond to his requests for disclosure, it does not amount to a separate claim under §§ 1021-25.

Here, Sam alleges that Creare has failed to produce several specific items in response to his written requests. Specifically, he alleges that Creare has failed to produce: (1) an accounting of any dividends received on the Creare stock that the trust holds on his behalf, as well as any dividends declared or paid on other Creare stock in the last 18 months; (2) the details of Creare's profit-sharing plan for the 1992 fiscal year; (3) Creare's financial statements from 1979 to present; (4) a list of Creare's stockholders from 1979 to present; (5) the dollar amount of the yearly profit-sharing pool from 1979 to present; (6) yearly distribution percentages, including amounts, from 1979 to present; and (7) records of all meetings and actions taken by the trustees of the retirement plan since 1979.

Several of these requests may be disposed of summarily. Neither §§ 1021-25 nor the federal regulations issued thereunder impose any separate requirement that plan participants be furnished with records of the actions and meetings of their plan's trustees, Chambless, 571 F. Supp. at 1456-57, with an employer's financial statements, stockholder lists or dividend records, Tortoro v. H.A. De Hart & Son, Inc., No. Civ. A. 92-3449 (JEI), 1994 WL 114562, at *8 (D.N.J. Mar. 29, 1994), or with

9

information relating to other participants.[6]  Chambless, 571 F. Supp. at 1457.  Similarly, employers are not required to include these types of information in their summary plan descriptions, summary or full annual reports, individual benefits statements or any of the other plan-related documents mentioned in §§1021-25.

Although the majority of Sam's specific requests exceed the scope of ERISA's disclosure requirements, a genuine issue exists as to whether Creare reasonably should have responded to Sam's requests by providing him with a copy of the plan's 1992 annual report and a statement of his accumulated benefits.  Granted, Sam did not specifically request that Creare produce these documents. The sufficiency of a particular request, however, does not necessarily turn on whether the participant expressly asks for a document by name.  Instead, the request will be adequate if it (i) actually requests that specified information be produced, see Haberern v. Kaupp Vascular Surgeons Ltd., 24 F.3d 1491, 1505-06 (3d Cir. 1994); and (ii) judging from its content or the employer's response, the employer knew or reasonably should have known that the request could be answered by providing the

_____

[6]Another section of ERISA, § 1133, does provide for disclosure of information relating to the trustees' denial of a participant's request for benefits, but Sam does not claim that his request relates to this type of trustee action.

10

participant with one of the documents specified in §§ 1021-25. See, e.g., Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108, 1110-11 (10th Cir. 1994); Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir. 1990).

Here, Sam requested that Creare disclose the size of the profit-sharing pool for fiscal year 1992 (which would presumably be included in the plan's full annual report) and his accumulated dividends and profit-share contributions (which are presumably included in his benefits statement). Sam thus requested information that Creare was required to disclose, albeit only in the form of an annual report or individual benefits statement. Moreover, the overall thrust of many of Sam's requests was to obtain an itemization of Creare's contributions to the plan in 1992 and the amounts held in Sam's own benefits accounts. Accordingly, a fact-finder could reasonably conclude that Creare should have responded to Sam's requests by providing him with a copy of the plan's 1992 annual report and a statement of his individual benefits. See Boone, 20 F.3d at 1110-11 (participant about to be cashed out made sufficient request for benefits statement by indicating that "she had never received an accounting of her pension and profit sharing benefits and that she was requesting 'at this time a full and accurate accounting

11

as to the income, expenses, assets and liabilities' of her employer").  I therefore cannot grant Creare's motion for summary judgment in its entirety.[7]

Finally, Creare's motion does not address Sam's allegations that, by failing to respond to Sam's requests, Creare breached its fiduciary duty to "advise him of circumstances that threaten his interests under the Plan" and to "refrain from non-disclosure of . . . financial conditions, enhancements, and payments to other adversely affecting the Trust."  Several circuits have recognized that an ERISA fiduciary's disclosure obligations are "not limited to the dissemination of the documents and notices specified in 29 U.S.C. sections 1021-31, but may in some circumstances extend to additional disclosures where the interests of the [participants] so require."  Acosta v. Pacific Enterprises, 950 F.2d 611, 618 (9th Cir. 1991).  See also, e.g.,

---

[7]In the alternative, Creare argues that it has provided Sam with a benefits statement and 1992 annual report during in the regular course of its administration of the retirement plan. Even assuming that this would be an adequate response to Sam's request, see Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 933-34 (3d Cir. 1985), overruled on other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1111 (3d Cir. 1994), Sam denies receiving either of these two documents.  Moreover, provision of these documents at best obviates the need for equitable relief.  It does not shield Creare from § 1132(c)'s penalty provision.

Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750 (D.C. Cir. 1990); Dellacava v. Painters Pension Fund, 851 F.2d 22, 27 (2d Cir. 1988). Specifically, a fiduciary has an affirmative duty to comply with a beneficiary's reasonable requests for information to the extent that these requests "relate to the provision of benefits or the defrayment of expenses . . . [and] do not contradict or supplant the existing reporting and disclosure provisions." Acosta, 950 F.2d at 618. This duty encompasses a duty to "advise [inquiring participants] of circumstances which threaten interests relevant" to their benefits plan, including the "fiduciary's knowledge of prejudicial acts by the employer. . ." Eddy, 919 F.2d at 750. In light of these holdings, Sam has arguably stated a claim against Creare for breach of fiduciary duty. As Creare has not addressed this claim in its present motion, I do not scrutinize it here.

### III. Conclusion

For the foregoing reasons, Creare's motion for summary judgment is granted in part and denied in part. I will hold a status conference at 9:00 a.m. on August 30, 1994 to discuss

13

settlement possibilities and to set a trial schedule.

    SO ORDERED.


                                _____
                                Paul Barbadoro
                                United States District Judge

August 19, 1994

cc:  John W. Mitchell, Esq.
     Thomas H. Richards, Esq.