William B. SMITH, Plaintiff, Appellant,

v.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY, et al., Defendants, Appellees.

No. 88–1654.

United States Court of Appeals, First Circuit.

Heard May 1, 1989.

Decided June 22, 1989.

As Amended June 27, 1989.

Scott A. Lathrop, P.C., for plaintiff, appellant.

Estelle D. Franklin, Charles A. Shanor, Gen. Counsel, Gwendolyn Young Reams, Washington, D.C., Associate Gen. Counsel, and Lorraine C. Davis, Asst. Gen. Counsel, on brief for the E.E.O.C., amicus curiae.

Robert E. Sullivan with whom Judith A. Malone, Margaret Wood Hassan and Palmer & Dodge, Boston, Mass., were on brief, for defendants, appellees.

Before BOWNES and BREYER, Circuit Judges, and GRAY,* Senior District Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant, William B. Smith, appeals a jury verdict finding that defendants-appellees, Massachusetts Institute of Technology and MIT Lincoln Laboratory, did not violate the Age Discrimination In Employment Act, 29 U.S.C. §§ 621–634, by giving him disproportionately low salary increases and subsequently terminating his employment. Plaintiff raises three issues on appeal: erroneous jury instructions; the district court's refusal to strike certain evi-

* Of the Central District of California, sitting by designation.

dence; and the court's exclusion of certain evidence.

Defendant claims that plaintiff waived his right to object to the jury instructions by not following the strictures of Fed.R. Civ.P. 51. We agree. We first deal with the waiver question.

## I. JURY INSTRUCTIONS—WAIVER

■ Fed.R.Civ.P. 51 provides in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

Because the facts bearing on the rule are somewhat unusual, we state them in detail. The trial took 16 days. On the 16th day, February 11, 1988, the court instructed the jury. Counsel for the plaintiff objected to one part of the instructions. Defense counsel agreed that the objection was well taken and the court gave an additional instruction, correcting its previous mistake. No further objections were taken. The jury began deliberations at 12:35 p.m.

After the jury retired for deliberations, plaintiff's counsel informed the court that he would be out of state all of the following week. He requested that judgment not be entered until February 22, so he would have time after he returned to file any motions that might be necessary. Defense counsel did not object and the court granted the request. February 11, the day the case went to the jury, was a Thursday.

Sometime in the early afternoon of February 11, the jury submitted two questions to the court. At 3:05 p.m. the jury returned to the courtroom for further instructions in response to the questions. Before instructing the jury the court stated:

Counsel would ordinarily be here but because I released them to go back to their offices and so forth, I thought it would take up a considerable amount of time to wait for them to return. And they have agreed that I can instruct you provided I understand the question clear-

ly. Okay. And it is a matter of record what I say, so they're satisfied with this process.

Among the instructions given was the following:

I suggest to you that in addition to proving that he, Mr. Smith, was discriminated against on the basis of his age, Mr. Smith must prove that the alleged discrimination was purposeful or intentional. Mr. Smith must also prove that age was the motivating or determinative factor in MIT's decision to give him lower than expected salary increases or to discharge him in the sense that but for MIT's discrimination he would not have received lower than expected salary increases or have been discharged. Mr. Smith need not establish that the age was the sole or only factor causing MIT to act but that age was the motivating or determinative factor.

Since counsel were not present, no objections to any of the supplementary instructions were taken.

The jury failed to return a verdict on the following day, Friday, February 12.

The next record of any proceedings is for Tuesday, February 16. Another jury question had been submitted to the court. Before instructing the jury, the court stated:

I have a jury question. It is the latest question referenced to me and it is now marked juror question No. 5, and filed this day February 16th. I have called counsel, and counsel representing defendant is present. Counsel representing plaintiff is unavailable. But my understanding is that he chooses not to be here, and again I must continue without his presence. That's a fair statement.

The court in instructing the jury stated, *inter alia:* "Mr. Smith need not establish that the age was the sole or only factor causing MIT to act but that age was a motivating determinative factor." No verdict was returned on February 16.

On February 17, a problem arose when one of the jurors indicated that the jury was hopelessly deadlocked and he had to return to work within a few days. Defense counsel was present, having been notified

by the court that there was a jury problem. The court noted, "I have notified the other office but counsel for the plaintiff is not available." The court discussed the problem on the record. Before the jury came in, it expressly asked defense counsel to sit in the spectator section, "because I don't want to emphasize his [counsel for plaintiff] absence." No supplementary instructions were given. No verdict was returned on February 17.

On February 18, the jury asked the court another question. The court gave further supplementary instructions which contained the following:

> The plaintiff Mr. Smith must prove that age was the motivating or determinative factor in MIT's decision to give him lower than expected salary increases or to discharge him in the sense that but for MIT's discrimination he would not have received lower than expected salary increases or had been discharged.

Although plaintiff's counsel was not present, he specifically objects to this instruction. He states in his reply brief at page 4:

> On February 18, 1988, the trial court gave the jury instruction in question, which was in response to Jury Question No. 6. Prior to giving the jury instruction, the trial court had a telephone conference with counsel, which lasted on the order of one half hour, as to their objections and comments. Counsel for Smith strongly opposed any instruction based on *Loeb v. Textron*, 600 F.2d 1003 (1st Cir.1976). Despite hearing this objection, the trial court indicated that it would give such an instruction. And it gave such an instruction.

No mention is made by plaintiff of the other two supplementary instructions similar to the one given on February 18.

This circuit has consistently held that the strictures of Rule 51 must be followed without deviation. In *McGrath v. Spirito*, 733 F.2d 967, 969 (1st Cir.1984), we held:

> A trial court's statement after the charge that objections made prior to it will be saved does not absolve an attorney from

following the strictures of the rule. Objections cannot be carried forward. The rule is binding on both the court and attorneys and neither can circumvent it.

This admonition was repeated in *Ouimette v. E.F. Hutton & Co., Inc.*, 740 F.2d 72, 76 (1st Cir.1984). Although the court made no record reference to the telephone conversation, we accept counsel's representation that there was one and as to what was said. But regardless of any assurances the court may have implied as to saving objections to the proposed instruction,[1] it had no authority to allow counsel to deviate from or circumvent the rule.

We have construed the Rule's requirement that a party must object "before the jury retires to consider its verdict" to mean that the objection must be made *after* the instructions are given to the jury:

> Even if plaintiff's requested instruction had been proper, counsel failed to raise that objection again subsequent to the actual charge. According to a long line of precedents in this circuit, such an omission constitutes waiver of the objection pursuant to Federal Rule of Civil Procecure 51. *See, e.g., Brown v. Freedman Baking Co., Inc.*, 810 F.2d 6, 9 (1st Cir.1987); *Coy v. Simpson Marine Safety Equipment, Inc.*, 787 F.2d 19, 26 (1st Cir.1986); *Emery–Waterhouse Co. v. Rhode Island Hosp. Trust Nat'l Bank*, 757 F.2d 399, 411 (1st Cir.1985); *McGrath v. Spirito*, 733 F.2d 967, 968–69 (1st Cir.1984); *Monomoy Fisheries, Inc. v. Bruno & Stillman Yacht Co.*, 625 F.2d 1034, 1036 (1st Cir.1980); *Carrillo v. Sameit Westbulk*, 514 F.2d 1214, 1219 (1st Cir.1975); *United States v. Taglianetti*, 456 F.2d 1055, 1056–57 (1st Cir. 1972); *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d 970, 976 (1st Cir.1972); *Dunn v. St. Louis–San Francisco Ry. Co.*, 370 F.2d 681 (10th Cir.1966) (Aldrich, J., sitting by designation); *Marshall v. Nugent*, 222 F.2d 604, 615 (1st Cir.1955).

*Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 809 (1st Cir.) (footnote omitted), *cert. denied*, — U.S. —,

---

1. There is nothing in the record suggesting that any such assurances were made.

109 S.Ct. 392, 102 L.Ed.2d 381 (1988). The reason for "firm adherence to Rule 51 is to give the trial court an 'opportunity to correct any errors before it is too late.'" *Kelley v. Schlumberger Technology Corp.*, 849 F.2d 41, 44 (1st Cir.1988) (quoting *Brown v. Freedman Baking Co.*, 810 F.2d 6, 9 (1st Cir.1987)).

■ The failure of plaintiff's counsel to be present when the third set of supplementary instructions was given to the jury constituted a waiver of any objections to the instructions. And the waiver could not be cured by telephonic objection to the proposed instruction beforehand. Supplementary instructions in response to jury questions may be just as important as the initial charge, if not more so. It is the duty of counsel to be either in the courtroom during jury deliberations or available on short notice, in the event a problem arises. A jury case is not over until the verdict is finally returned. If supplementary instructions become necessary and counsel is not present, this constitutes a waiver of any objections to the supplemental instruction. Lawyers cannot be compelled to be present during jury deliberations but if they choose to neglect their duty, they take their chances on what is said and done by the court in their absence.

■ There is a "plain error" exception for failure to follow Rule 51, but its application is restricted:.

> However, the plain error rule "should be applied sparingly and only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." *Nimrod v. Sylvester*, 369 F.2d 870, 873 (1st Cir.1966). We have adopted the standard for plain error in the Rule 51 context expressed by professors Wright and Miller: "'If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Morris v. Travisono*, 528 F.2d 856, 859 (1st Cir.1976) (quoting 9 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2558, at 675 (1971)).

*Wells Real Estate v. Greater Lowell Bd. of Realtors*, 850 F.2d at 809. We have read carefully the entire charge and all the supplemental instructions. Considering the instructions as a whole, as we must, we find that the instruction to which plaintiff assigns error did not result in "a clear miscarriage of justice" nor has it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." In fact, we are not sure that the instruction was error at all.

## II. THE COURT'S REFUSAL TO STRIKE CERTAIN EVIDENCE

■ Plaintiff claims that he was not furnished with the data base that formed the core of the testimony of defendant's expert, Dr. Herbert Weisberg. Defendants did file a proposed list of exhibits which included Dr. Weisberg's report and related charts, on which plaintiff relied in preparing for cross-examination of the expert. Plaintiff alleges that Dr. Weisberg testified on the basis of a statistical analysis and charts that were not part of his report. According to plaintiff, defendant Lincoln Laboratory furnished Dr. Weisberg with a complete data base on employee terminations but did not provide this information to plaintiff, although he had asked for all such information during discovery. It is plaintiff's contention that the failure of defendant Lincoln Laboratory to apprise him that Dr. Weisberg would testify mainly about the statistical relationship between age and involuntary terminations violated Fed.R.Civ.P. 26(e)(1)(B) and that it was error for the court to refuse to strike Weisberg's testimony.

The court heard the motion to strike the expert testimony after the evidence closed. Defendant asserted that throughout the discovery and production period plaintiff was given "all information requested in the discovery process relating to data concerning employees." Defense counsel offered to prove this through testimony of Attorney Mary Marshall, counsel for MIT throughout the discovery and production period. Defense counsel also claimed that a report covering Weisberg's own prepara-

tion was furnished plaintiff's counsel on December 8, and a subsequent revision was also given him. When plaintiff's counsel stated that he had not received this report, defense counsel offered to prove that it was provided. Defense counsel made two further assertions:

that the underlying data from which Mr. Weisberg made the calculations was either available to Mr. Marx [plaintiff's expert] or was not made available pursuant to the rulings on discovery, the positions taken on discovery.

Finally, Mr. Weisberg has been held out as being available for depositions throughout the whole process, and his deposition was never taken.

There was further discussion and argument between opposing counsel. Plaintiff's counsel insisted that he did not know that the data on which defendant's expert relied was different from the data furnished plaintiff during discovery until he elicited that information from Weisberg on cross-examination.

Fed.R.Civ.P. 26(e)(1)(B) provides:

**(e) Supplementation of Responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.

In *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1 (1st Cir.1985), we faced a similar issue and discussed the scope and purpose of the rule at length. We noted that the purpose of the rule was to alleviate "the heavy burden placed on a cross-examiner confronted by an opponent's expert whose testimony had just been revealed for the first time in open court." *Id.* at 7. We pointed out that the rule was designed to give the cross-examiner advance preparation and

thus promote effective cross-examination, and that to make the rule effective, the Advisory Committee Note calls for sanctions by the court including exclusion of evidence, granting a continuance or other suitable action. We emphasized that the rule should not be read mechanically, but construed in light of its purpose to narrow the issues and eliminate surprise. *Id.*

Our review of the pertinent case law led us to conclude that "the emphasis in evaluating the decision to admit testimony over a Rule 26(e) objection entails careful balancing. Trial and appellate courts should look to the conduct of the trial, the importance of the evidence to its proponent, and the ability of the defendant to formulate a response." *Id.* at 8. Noting that one of the sanctions is granting a continuance, we stated: "Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess so they may attempt to counter the opponent testimony." *Id.* (citations omitted). In *Laaperi v. Sears, Roebuck & Co., Inc.*, 787 F.2d 726, 733 (1st Cir.1986), we followed the teachings of *Johnson* and held that the trial court did not abuse its discretion in refusing to strike the testimony of an expert.

We have examined carefully the direct and cross-examination of defendant's expert, Dr. Weisberg, giving special attention to the cross-examination. Several things stand out. One, the cross-examination of Weisberg was comprehensive and thorough. It is obvious that plaintiff's counsel was well prepared. Two, the data about which plaintiff complains did not result in an abrupt volte-face in the expert's testimony. This is not the situation of a new or alternate theory being offered for the first time at trial. In fact, when asked by plaintiff's counsel what impact the data would have on one of the chief exhibits (Exhibit 70), the expert replied that he did not know, specifically but, "[i]n general terms I would expect it to have a small impact." Three, the direct and cross-examination reveals that the data at issue was not the main basis for the expert's conclusions. It merely added to the statistical picture and made

it more complete. And finally and most importantly, plaintiff's counsel did not ask for a recess or continuance so that he could examine the undisclosed data. Indeed, no objection was made at the time the disclosure was elicited. The failure to object, of course, runs afoul of the timely objection rule.[2] The motion to strike was not made until after the evidence was closed.

Considering all of the circumstances, we cannot find that the trial court abused its discretion in refusing to strike the expert's testimony.

## III. THE EVIDENTIARY EXCLUSION

 The final issue is whether the district court erred in excluding three reports contained in the investigation file of the Equal Employment Opportunity Commission (EEOC). After plaintiff filed a charge of age discrimination with the EEOC, the agency began an investigation of defendant Lincoln Laboratory. Equal Opportunity Specialist, John J. Martin, was the assigned investigator. Martin made three reports to his supervisor, Richard W. Trucchi. The reports are dated January 15, June 25 and December 19, 1980, and total twenty pages. The reports are critical of Lincoln Laboratory's treatment of its older employees. The January 15 report contains statements of 12 former employees to the effect that age was a factor leading to their termination or the main reason for it. This eight-page report concludes as follows: "It appears that there is a reasonable basis for concluding that the Respondent [Lincoln Laboratory] maintains policies and practices that discriminates [sic] against employees on the basis of their age in violation of the ADEA." The four-page June 25 report recommends that a questionnaire be sent to those persons terminated in 1978 and 1979 who were in the protected age group. The final eight-page report focused on Lincoln Laboratory's treatment of plaintiff. The report ends with a recommendation for "a

finding that MIT Lincoln Laboratory violated the ADEA in retaliating against Mr. Smith."

On December 31, 1980, Martin's supervisor, Trucchi, wrote a letter to the MIT director of personnel advising him that as a result of the EEOC's investigation, "certain practices of [Lincoln Laboratory] are believed to be in violation of the Age Discrimination Act of 1967, as amended."

As part of its motion to exclude the investigative reports defendants included an affidavit of Charles Looney, Area Director of the EEOC. The affidavit states in pertinent part:

It is EEOC policy that this type of internal memoranda are not disclosable to anyone under any circumstances. As far as I know, it has never been EEOC policy to release such documents. I do not know why they were released in this case. Such memoranda do not constitute any official findings by the EEOC.

We now examine the pertinent law. Fed. R.Evid. 803(8)(c) provides in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The most recent United States Supreme Court case touching on the matter is *Beech Aircraft Corp. v. Rainey*, — U.S. —, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The Court held that "factually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)(c)." *Id.* 109 S.Ct. at 446. It pointed out that "a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof—whether narrow 'fac-

---

2. Fed.R.Evid. 103 provides in pertinent part:
 **Rule 103. Rulings on Evidence**
 **(a) Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

 **(1) Objection.** In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

tual' statements or broader 'conclusions'—that she determines to be untrustworthy.[11]" *Id.* 109 S.Ct. at 448–49. Footnote 11 refers to the Advisory Committee's proposed standard for determining trustworthiness.

There are two cases from this court bearing directly on the issue. In *Hilton v. Wyman–Gordon, Co.,* 624 F.2d 379, 383 (1st Cir.1980), we stated: "Moreover, as this case makes abundantly clear, while EEOC findings in general may be significant evidence, their probative force in individual cases varies considerably and is left to the determination of the trial court." In *Blizard v. Fielding,* 572 F.2d 13, 16 (1st Cir.1978), we stated: "While recognizing that findings by the EEOC are entitled to great deference by the district court, we cannot say that a court is obliged to refer to those findings in its opinion."

We interject here that the reports by Martin were not findings by the EEOC. The only official finding of the agency was the statement in Trucchi's letter to the personnel director of MIT that certain practices of the defendants were believed to be in violation of the ADEA.

Our canvass of the other circuits reveals general agreement that the question of admissibility is one for the discretion of the district court. *Tulloss v. Near North Montessori School,* 776 F.2d 150 (7th Cir.1985), was an appeal from a bench trial decision finding no discrimination based on national origin. One of the issues on appeal was the refusal of the court to admit the entire investigative file. The court stated:

> Generally, the courts of appeals are in agreement that it is not error to exclude the investigator file of the EEOC in order to insure a fair and independent determination of the facts by the court. As one court has noted, the EEOC file is a "mish-mash of self-serving and hearsay statements and records; ... justice requires that the testimony of the witnesses be given in open court, under oath, and subject to cross examination." *Gillin v. Federal Paper Board Co.,* 479 F.2d 97, 99 (2d Cir.1973) (quoting the district court's opinion, 52 F.R.D. 383, 385 (D.Conn.1970)).

> A rule of *per se* admissibility of the investigative file would clearly undercut the district court's function as independent fact-finder. The better approach is to permit the district court to determine, on a case-by-case basis, what, if any, EEOC investigator materials should be admitted at trial.

*Id.* at 154 (footnote omitted). In *Moore v. Devine,* 767 F.2d 1541 (11th Cir.1985), *modified on other grounds,* 780 F.2d 1559 (11th Cir.1986), a case involving alleged racial discrimination, the court cited with approval our holdings in *Blizard v. Fielding* and *Hilton v. Wyman–Gordon, Co.* The Fifth Circuit held, in an alleged racial discrimination case, "that the trial court's decision to exclude testimony by the EEOC investigator as to his evaluation of facts already in evidence was not an abuse of discretion." *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 579 (5th Cir. 1981). And in a jury case under Title VII, the Fourth Circuit affirmed the refusal of the district court to admit the EEOC records into evidence, stating that even in cases where the records may be admitted, "the admission of such records is discretionary with the District Court." *Cox v. Babcock and Wilcox Company,* 471 F.2d 13, 15 (4th Cir.1972). We have found no cases, and counsel has cited none, mandating the admission of the EEOC investigative reports.

We know from an examination of the record that the district court gave careful consideration to the question of the admissibility of the EEOC investigative reports. We cannot say that it abused its discretion in excluding them.

*Affirmed.* Costs awarded to appellee.