William A. BRANDT, Jr.,
Trustee, Plaintiff,

v.

HICKS, MUSE & CO., INC.
et al., Defendants.

Civil Action No. 97–40020–NMG.

United States District Court,
D. Massachusetts.

Sept. 11, 1997.

Michael A. Khoury, Cohn & Kelakos, Boston, MA, J. Joseph Bainton, Jose Baez, Ross & Hardies, New York City, for Plaintiff.

Carl E. Metzger, Testa, Hurwitz & Thibeault, Boston, MA, for Helen Cyker, Wand Partners, Mercury Asset Management and Life Partners Group.

David C. Fixler, Rubin and Rudman, Boston, MA, for Robert Casey and Helen Cyker.

Joseph L. Clasen, Robinson & Cole, Stamford, CT, H. Bissell Carey, III, Robinson & Cole, Boston, MA, for Chrysler Capital Corp.

Dennis E. Glazer, Davis, Polk & Wardwell, New York City, for J.P. Morgan.

Gary L. Weiner, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Vincent A. Mai and Thomas L. Kempner.

Hugh J. Gorman, III, Hinckley, Allen, Snyder & Comen, Boston, MA, for Joel Lewin.

Christopher T. Vrountas, Cooke, Clancy & Gruenthal, Boston, Ma, for Marvin Cyker.

Arnold P. Messing, Choate, Hall & Stewart, Boston, MA, Thomas G. Rafferty, Cravath, Swaine & Moore, New York City, for Lazard Freres & Co.

Edwin G. Schallert, Debevoise & Plimpton, New York City, for Chancellor Trust Co. and Chancellor Capital Management, Inc.

David A. Parke, Bulkley, Richardson & Gelinas, Springfield, MA, for Cramer, Rosenthal, MC.

Mark N. Parry, Moses & Singer, New York City, for Gemini Partners and Arthur M. Goldberg.

Kayalyn A. Marafioti, Louis A. Goodman, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for Skadden, Arps, Slate, Meagher & Flom.

Kathleen S. Donius, Milwaukee, WI, for Valuation Research Corp.

Vincent M. Amoroso, Peabody & Arnold, Boston, MA, for Robert Mulcahy, III.

John A.D. Gilmore, Hill & Barlow, Boston, MA, for The Airlie Group.

Daniel J. Lyne, Hanify & King, P.C., Boston, MA, for Ray Doherty.

Mike McKool, Jr., McKool Smith, P.C., Dallas, TX, for The Hicks, Muse.

Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, New York City, for The Apollo Group.

Christian M. Hoffman, Foley, Hoag & Eliot, Boston, MA, for Coopers & Lybrand.

Arthur Steinberg, Kaye, Scholer, Fierman Hays, Handler, New York City, for Kaye, Sholer, Fierman, Hays & Handler.

William J. Hanlon, Goldstein & Manello, P.C., Boston, MA, for Conseco.

John O. Mirick, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, John D. Hanify, Hanify & King, P.C., Boston, MA, Mike McKool, Jr., McKool Smith, P.C., Dallas, TX, for Hicks Muse Equity Fund, L.P., HMC Partners, HMC Partners, L.P., Healthco Holding Co., Inc., Thomas O. Hicks, John R. Muse, Jack D. Furst, Ray C. Davis and Davis, McCombs, Harkey & Carter.

Steven M. Pesner, Akin, Gump, Strauss, Hauer & Feld, New York City, for Apollo Investment Fund, L.P., Apollo Advisors, L.P.A, Apollo Capital Management, Inc., Lion Capital Management, Inc., Altus Finance, S.A., Lion Advisors, L.P. and Akin, Gump, Strauss, Hauer & Feld, L.L.P.

Alan Kolod, Roger Waldman, Moses & Singer, New York City, for Kenneth W. Atchison.

George W. Mykulak, William J. Hanlon, Robert Somma, Goldstein & Manello, P.C., Boston, MA, for National Fidelity Life Insurance Company and Life Partners Group, Inc.

Thomas C. Rice, Simpson, Thacher & Bartlett, New York City, for Simpson, Thacher & Bartlett.

## MEMORANDUM AND ORDER

GORTON, District Judge.

I. *Introduction:*

Between April 23, 1997, and June 6, 1997, this Court conducted a trial in the above-captioned civil action. With respect to all of the defendants except Lazard Freres & Co LLC ("Lazard"), the claims made by the plaintiff, William A. Brandt, Jr., ("the Trustee") were tried to a jury. That jury returned a verdict in favor of the defendants on all counts submitted to it for consideration. The claims asserted by the Trustee against Lazard were tried to the same jury for an advisory verdict and were as follows:

1. aiding and abetting a breach of fiduciary duty by the Board of Directors of Healthco International, Inc.;

2. gross negligence and bad faith;

3. breach of fiduciary duty; and

4. breach of contract.

With respect to those claims, referred to in the same sequence, the advisory jury found that:

1. none of the Healthco Directors breached any fiduciary duty to Healthco (thereby precluding any claim of aiding and abetting against Lazard);

2. Lazard did not act with gross negligence or in bad faith;

3. Lazard had no fiduciary duty to the Healthco Board of Directors; and

4. Lazard did not breach its contract with Healthco.

II. *Findings Of Fact*

Healthco was a Delaware corporation formed in 1967 by brothers Marvin (known as "Myer") and Michael Cyker. It provided supplies, equipment and services to dentists and institutional providers of dental care, including dental schools and dental laboratories. Its principals eventually developed Healthco into a worldwide business and one of the leaders of its kind in the dental industry.

Despite Healthco's remarkable success in the industry, by the late 1980s it began to encounter financial difficulties. Raymond Doherty, Healthco's Chief Financial Officer, confirmed at trial that Healthco's 1990 results were not as favorable as management had expected. There was credible and convincing testimony that Healthco employed an alarmingly outdated warehouse distribution system. For example, Thomas Warwick, a branch manager for Healthco, testified that his warehouse in Texas was plagued by overvalued and obsolete inventory. Moreover, Healthco's computer system was archaic and the company continued its disturbing practice of stretching its Accounts Payable to its suppliers' limits.

On May 3, 1990, before Healthco could satisfactorily resolve the inefficiencies in its operations, Gemini Partners LP ("Gemini") publically disclosed that it owned 9.96% of Healthco's outstanding stock and that it would commence a proxy contest to replace Healthco's Board of Directors. In response to the Gemini announcement, the Healthco Board sought advice from the law firm of Wachtell, Lipton, Rosen & Katz ("Wachtell"), and, on May 22, 1990, Lazard and Healthco entered into a Retention Agreement.

Pursuant to the Retention Agreement, Lazard agreed to advise and assist Healthco with the control issues raised by the proxy solicitation. Specifically, Lazard agreed to provide 1) advice and assistance with respect to the implementation of a shareholder rights plan, 2) assistance in evaluating Healthco's financial preparations to defend against Gemini's significant acquisition, 3) ongoing monitoring of Healthco's stock market activity, 4) a preliminary financial analysis of Healthco, and 5) such other services as Lazard and Healthco might agree upon. The Retention Agreement provided, specifically, that Lazard would not make any appraisal of the assets of Healthco.

On June 15, 1990, the same day that the Healthco Board determined to focus on a sale of the Company, Lazard and Healthco signed a second Retention Agreement ("the Agreement"). Pursuant to the Agreement Lazard agreed to

advise [Healthco] in connection with a variety of financial matters and [to] consider the appropriateness of various financial

and acquisition alternatives which may merit consideration by [the Company].

Healthco agreed that Lazard would serve as the Company's "exclusive financial advisor" for a period of one year. The Court finds that the term "exclusive financial advisor" meant that the Healthco Board would not hire another investment bank to assist in any contemplated transaction and that Lazard was entitled to its fee if any transaction were consummated.

On August 10, 1990, Morgan, Stanley & Co. Inc. ("Morgan Stanley"), an investment firm specializing in corporate buyouts and a financial advisor to Hicks, Muse & Co. Inc. ("Hicks, Muse"), informed Lazard that Hicks, Muse might be interested in acquiring Healthco. In general terms, Lazard was informed that Hicks, Muse wanted to acquire Healthco to make specific business improvements that the Company had been unable to accomplish because of the disruption caused by the threat of a takeover by Gemini.

On September 4, 1990, Healthco and newly formed subsidiaries HMD Acquisition and Healthco Holding executed a Merger Agreement ("the First Merger Agreement") which was designed to result in the purchase of Healthco by Hicks, Muse. Following the execution of the First Merger Agreement, Hicks, Muse undertook a detailed due diligence review of Healthco. On December 7, 1990, HMD Acquisition and a consortium of banks ("the Bank Group"), led by Manufacturers Hanover Trust Company ("MHTC"), developed a plan for financing the acquisition.

On February 5, 1991, the First Merger Agreement was ratified by Healthco stockholders and on February 20, 1991, the Healthco Board met by telephone conference with Wachtell to work out the details. During that meeting, the Board received a report from Ray Doherty, Healthco's CFO, on the preliminary, unaudited 1990 results. Mr. Doherty reported that, although sales had increased from the prior year, there appeared to have been a significant decline in the gross profit margin on the basis of which the Company traditionally determined the value of its inventory.

On the following day, February 21, 1991, Hicks, Muse was informed by Steven Golub ("Golub"), Healthco's investment banker at Lazard, of the ominous nature of Healthco's preliminary, unaudited 1990 results. Hicks, Muse responded that, in light of those prospects, it doubted that the merger could be completed at the price set forth in the First Merger Agreement ($19.25 per share).

One week later, the Healthco Board met at Wachtell's offices with representatives of Wachtell and Lazard present. Golub of Lazard reported that, based upon discussions he had had with representatives of Morgan Stanley (Hicks, Muse's financial advisor), it appeared that Hicks, Muse was willing to pay $14.75 per share in cash, plus a pro rata portion of the common stock of HPSC, Inc., a partially owned subsidiary of Healthco.

On March 1, 1991, Healthco Holding submitted in writing a new cash merger proposal at a price of $15 per share. In contrast to the first Merger Agreement, Healthco agreed to give its 1990 audited, consolidated financial statements to Healthco Holding within a few days thereafter. As a result of detailed and complex negotiations over the following several weeks, a second Merger Agreement was executed on March 26, 1991 ("the Second Merger Agreement"), whereby HMD Acquisition agreed to acquire, for $15 per share, all of Healthco's outstanding common stock through a two-step merger plan.

Prior to its proposal that resulted in the Second Merger Agreement, the Healthco Board held more than 20 meetings. It gave careful consideration to relevant concerns, including serious contemplation of abandoning the transaction altogether. Finally, at the Board meeting on March 26, 1991, the Directors, by a vote of five to two, approved a merger between Healthco and HMD Acquisition. The Directors who voted in favor of the merger at $15 per share offered credible, unrebutted testimony that they exercised their own independent business judgment in casting their affirmative votes.

At the request of the Healthco Board, by letter dated March 26, 1991, Lazard provided a fairness opinion to the Directors in which it confirmed that it had undertaken neither an independent verification of information pro-

vided to it by other professionals involved in the transaction nor an independent valuation or appraisal of any of the assets or liabilities of Healthco. Lazard concluded that the proposed cash consideration of $15 per share for the Healthco Common Stock was fair, from a financial perspective, to such stockholders. On April 2, 1991, Healthco sent a proxy statement/schedule 14D–9 to its stockholders. That statement described the tender offer of HMD Acquisition and the contemplated merger.

Pursuant to the terms of the Second Merger Agreement, Valuation Research, an independent solvency professional, was retained to analyze the solvency issues and to prepare an appropriate solvency opinion as required by the Healthco Board and its counsel. Valuation Research rendered its initial solvency opinion on April 30, 1991. On the basis of its analysis of Healthco's historical records, including its audited financial statements, the 1990 results, Hicks, Muse's business plan and projections, industry trends and forecasts and various deal documents, Valuation Research concluded that Healthco would be solvent, able to pay its debts and have adequate capital after the merger. Valuation Research did not receive or solicit advice from Lazard in forming its solvency opinion and, on May 22, 1991, the merger closed effective as of April 30, 1991.

Prior to the closing, Valuation Research issued a supplemental written solvency opinion to

> update the analysis performed in conjunction with the issuance of the Prior Opinion in order to determine whether the conditions satisfied for purposes of the Prior Opinion were also satisfied as of the Closing Date.

In addition to the materials and information considered by Valuation Research when it issued its initial solvency opinion on April 30, 1991, Valuation Research considered Healthco's March 31, 1991, interim financial statements, which reported a loss for the first quarter of 1991. Moreover, Healthco's management advised Valuation Research that between March 31, 1991, and the closing on May 22, 1991, there had been no significant change in Healthco's stated liabilities or the liabilities of Healthco to be financed. Based upon the information then available and its own analysis, Valuation Research again rendered the opinion that Healthco would be solvent, able to pay its debts and have adequate capital after the merger.

Testimony at trial established conclusively that no one ever asked or relied upon Lazard to provide an opinion regarding the post-merger financial condition of Healthco. That responsibility lay with Valuation Research which incorporated its own financial projections as well as those provided by Hicks, Muse into its analysis.

After the sale of Healthco to Hicks, Muse, Lazard's role in the transaction came to an end and Lazard did not thereafter have any further business relationship with Healthco. Subsequently, despite its best efforts to implement the Hicks, Muse plan engineered to turn the Company around, Healthco was ultimately unsuccessful in its endeavor. Due in large part to the failure to overhaul its computer system, the improvement of which was deemed essential by all concerned, Healthco was unable to achieve inventory consolidation. Mr. Hicks testified without contradiction that the failure to upgrade the computer system caused the salesforce to lose "confidence in the system, so they would double inventory.... It created a liquidity issue that otherwise wouldn't have been there". Further, testimony at trial established that after the merger, certain suppliers attempted to change their historical payment terms with Healthco but that the Company continued to burden them with severely stretched accounts payable terms. As the situation worsened, Healthco fell into an adversarial relationship with its banks, a condition which, in effect, foreclosed Hicks, Muse from infusing additional capital into the Company. Finally, on June 9, 1993, Healthco filed for protection under Chapter 11 of the Bankruptcy Code. The matter was converted to a Chapter 7 proceeding three months later.

### III. Discussion

#### A. Adversary Proceeding

William A Brandt, Jr., the Chapter 7 Trustee ("the Trustee"), filed an adversary

proceeding against virtually every entity that participated in the acquisition of Healthco. The initial defendants included selling stockholders, the buyer, the financing banks, debenture holders, directors, officers, financial advisors, lawyers and accountants. In general terms, the Trustee alleged that the acquisition of Healthco, in the form of a leveraged buy out, burdened Healthco with untenable obligations under bank loans and subordinated debentures the proceeds of which were paid to the selling stockholders rather than used to remedy its business shortcomings or meet its increasing financial obligations.

As a result, Healthco was, according to the complaint, left with unreasonably small capital because of the acts of the several defendants which constituted, among other things, fraudulent transfers, breaches of fiduciary duty and the aiding and abetting of the breaches of fiduciary duty. All of the defendants, other than Lazard, claimed a right of trial by jury in the adversary proceeding before the Bankruptcy Court and, because of a lack of unanimous consent, the matter was transferred to this Court for a trial by jury on those issues.

### B. The Claim Of Aiding & Abetting A Breach Of Duty By Healthco's Directors

■ This Court instructed the advisory jury that, in order to sustain his aiding-and-abetting claim, the Trustee was required to establish that the Healthco Directors breached their fiduciary duty to the Company, that employees of Lazard had actual knowledge of the alleged breach and that Lazard substantially assisted or encouraged the alleged breach. The jury rendered a unanimous verdict against the Trustee (which was binding with respect to all defendants other than Lazard) on an essential element of his case against Lazard, namely, that none of the Directors breached his fiduciary duty to Healthco. Moreover, there was no credible evidence presented at trial that would establish that Lazard knowingly participated in a breach of fiduciary duty by the Healthco Board even had one been found. For these reasons and based upon the findings of fact made in the preceeding section of this memorandum, this Court concludes that Lazard is entitled to judgment in its favor on the Trustee's claim of aiding and abetting.

### C. The Claim For Gross Negligence

■ The Advisory Jury found by unanimous vote that Lazard did not act with gross negligence or in bad faith. It was instructed by this Court that, to establish gross negligence under Delaware law, which controls the relationship between Lazard and the Healthco Board pursuant to Paragraph 6 of the Retention Agreement between Lazard and the Board, the Trustee had to demonstrate that Lazard acted with reckless indifference to or a deliberate disregard of its obligations. This Court further instructed the jury that a finding of bad faith requires even more: "[a] person is said to act in bad faith where he or she consciously does wrong for a dishonest or deceptive purpose".[1]

This Court finds that, as the "exclusive financial advisor" to the Healthco Board, Lazard did all that was asked and required of it under the Retention Agreement and, specifically, that Lazard

1) participated in conversations between the Healthco Board, management and institutional shareholders of Healthco,

2) contacted approximately 50 potential buyers in an effort to fulfill the Board's mandate to "maximize shareholder value",

3) assisted the potential buyers in arranging to conduct their due diligence of Healthco,

4) assisted the Healthco Directors in negotiating a price with Hicks, Muse, and

5) ultimately advised the Healthco Board regarding the financial fairness of the price to be paid by Hicks, Muse to Healthco's stockholders.

---

1. With the exception of the aiding-and-abetting claim, the Trustee did not object to the jury instructions with respect to the claims against Lazard and thus waived any argument that he is not bound by those instructions on the applicable law. See, e.g., Fed.R.Civ.P. 51; Kerr–Selgas v. American Airlines, Inc., 69 F.3d 1205, 1212–13 (1st Cir.1995); Smith v. M.I.T., 877 F.2d 1106, 1109–10 (1st Cir.1989).

Any analysis of the post-transaction financial condition of Healthco was the responsibility of professionals other than Lazard. The evidence convinces this Court that Lazard, as well as the other professionals involved in the transaction, were fully aware that such post-transaction analysis was within the scope and expertise of Valuation Research and was not Lazard's responsibility. Consequently, this Court concludes that Lazard acted neither with gross negligence nor in bad faith.

### D. *The Claim Of Breach Of Fiduciary Duty*

■ This Court instructed the jury that, in order to sustain his claim that Lazard breached a fiduciary duty to the Healthco Board, the Trustee had to prove, *inter alia,* that Lazard stood in "a superior position to exert unique influence or control over Healthco's board of directors" and then "use[d] its authority to its own advantage and to the detriment of the Healthco board of directors". The jury advised that the Trustee had failed to meet his burden on any of those essential elements.

This Court finds that the evidence at trial conclusively demonstrated that Lazard did not stand in a position of superiority over the Healthco Board and then impose upon it acceptance of the transaction with Hicks, Muse. The Healthco Directors were sophisticated, diligent and conscientious and were fully advised by a prestigious law firm acknowledged for its expertise on the subject of leveraged buy outs. Most instructive on this issue, however, was the unrebutted testimony of the affirming directors themselves that they exercised their own independent business judgment without surrendering any decision making to Lazard. Their attorney, Mr. Herlihy, confirmed that fact. Accordingly, this Court concludes that Lazard is entitled to judgment on Trustee's claim for breach of fiduciary duty.

### E. *The Claim Of Breach Of Contract*

■ The advisory jury found, again unanimously, that Lazard did not breach its contract with Healthco. The evidence established, through written letter agreements and the parties' course of conduct, that La-

zard and Healthco had a valid, binding contract. During the course of the contractual relationship, Lazard's role and functions evolved in response to specific instructions from the Healthco Board.

At various times, depending upon the permutations of the transaction, Lazard was asked to give, and rendered, advice on specific issues. For instance, Lazard was asked to render advice on possible responses to the Gemini takeover attempt. After the Healthco Board determined that a sale of the Company was the only viable alternative, Lazard was asked to perform a number of tasks and to give advice specifically related to the prospective sale. Under its agreement with Healthco, Lazard undertook to "advise [Healthco] in connection with a variety of financial matters and [to] consider the appropriateness of various financial and acquisition alternatives which may merit consideration." The Agreement itself makes it clear that Lazard's duties were a function of the Board's request.

The testimony of the Healthco Directors at trial established that once the Healthco Board determined to sell the Company, they looked to Lazard to find a buyer, to help negotiate the transaction and, after approval of the transaction, to provide the Board with a fairness opinion. The evidence adduced at trial established conclusively that, upon Healthco's request, Lazard performed its contractual duties and obligations as more particularly set forth above in Section III.C. of this Memorandum.

Lazard's duties as "exclusive financial advisor" under the contract were determined by the Healthco Board and no evidence at trial contradicted the assertion by Mr. Herlihy, Healthco's New York counsel, that Lazard performed the conventional investment banking services for which it was retained as well and as soundly as could have been done. Consequently, the Trustee's breach of contract claim against Lazard also fails.

### ORDER

Based upon the evidence admitted at trial and for the reasons set forth above, the advisory jury verdict rejecting all of the Trustee's claims against Lazard is accepted

and adopted by this Court. Judgment shall, therefore, be entered in favor of Lazard on all claims asserted against it in this matter.

So Ordered.