# United States Court of Appeals
## For the First Circuit

---

No. 01-2512

SHAWNEE PATTEN,

Plaintiff, Appellant,

v.

WAL-MART STORES EAST, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Coffin and Cyr, Senior Circuit Judges.

---

John P. Gause with whom Berman & Simmons was on brief for appellant.
Christopher W. Nanos for appellee.

---

August 14, 2002

---

**COFFIN**, <u>Senior Circuit Judge</u>. Appellant Shawnee Patten, a former employee of appellee Wal-Mart Stores East, Inc., challenges two rulings made by the district court during the trial of her analogous claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213, and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551-4633. She asserts that the court incorrectly instructed the jury on her burden of proof and improperly excluded evidence of a state agency's finding of discrimination. Concluding that the district court did not err, we affirm the judgment in favor of Wal-Mart.

## I.  Background

Appellant suffers from Charcot-Marie-Tooth disease ("CMT"), a disability similar in its effects to muscular dystrophy.  Although the CMT does not prevent appellant from working, it substantially limits her ability to walk or stand for a long time.  Because of the illness, she often has pains in her arms and legs, and has an unusual gait.  Appellant's supervisors at Wal-Mart were aware of her disability from the time she first applied for a position there.  During appellant's ten-month employment, Wal-Mart repeatedly accommodated her by approving long-term leaves of absence and transferring her to less-demanding positions when she felt the CMT prevented her from adequately doing her job.

Throughout her tenure at Wal-Mart, which began on September 30, 1997, Patten's presence was marked by accommodations and absences, only sometimes because of CMT.  In October 1997, Patten suffered a back injury as a result of a fall unrelated to CMT.

-2-

From then through December, Patten was transferred to two new positions because she was restricted from various tasks, including standing and lifting. From January 2 through January 27, 1998, Patten took a leave of absence for a heart condition that was induced by caffeine. From February 24 through June 1, 1998, Patten took another leave of absence, related to CMT, for surgery to diminish the "hammer toes" syndrome that she had been experiencing.

When she returned to work at the beginning of June, Patten was restricted to only four hours of work per day and she could stand during only one of those hours. Patten informed Theresa Barrows, the personnel manager, of these limitations and was assigned to an alternate position for one month, after which she returned to a cashier's position.

Patten alleged that on the day she returned to work, she overheard Barrows, Gerald Tyler, the store's manager, and Paula Carey, the assistant store manager, having a conversation about her. Patten recalled hearing one of them make the following remarks: "We know Shawnee has a disability, but we're just tired of this. We're tired of her, and we just don't feel that she needs to be here."

Between June 27 and July 19, Patten missed six days of work, left early on another day (without justification), and called in sick one day. On July 19, Patten arrived at work, but felt ill. After she asked to be excused, Carey called Patten to her office and allegedly stated: "We understand that you have health problems. We understand that you are disabled, but we don't want you working

in this store." When Patten asked if she was being fired because of her disability, Carey allegedly responded, "you may take it as you want, but you are not working here."

Appellant sued Wal-Mart for discriminating against her on the basis of her disability, in violation of the ADA and the MHRA, and the case proceeded to trial. All of Patten's allegations were denied by management personnel. Carey testified that she terminated Patten's employment because of non-CMT-related attendance problems that had developed during Patten's final weeks at Wal-Mart. Tyler testified that Patten was fired for "gross misconduct of the attendance policy."

At the conclusion of the evidence, the district court pertinently instructed the jury on termination as follows:

> Termination. To succeed on her claim, Shawnee Patten has the burden of proving by a preponderance of the evidence that her disability was the determining factor in the decision to discharge her . . . .
>
> To prove that a disability was the determining factor in the decision to terminate her, Shawnee Patten is not required to prove that it was the sole motivation or the primary motivation for Wal-Mart's decision, but she must prove by a preponderance of the evidence that her disability actually made the difference in causing Wal-Mart to terminate her employment.

The jury concluded that although appellant is disabled under federal and state law, her disability was not the determining factor in Wal-Mart's decision to discharge her. It therefore found in Wal-Mart's favor. This appeal ensued.

## II. Discussion

### A. The Contested Jury Instruction

Appellant contends that the district court incorrectly instructed the jury that her supervisor's discriminatory animus had to be "the determining factor," rather than "a motivating factor," in the decision to terminate her. We review a contested jury instruction de novo, Ponce v. Ashford Presbyterian Cmty. Hosp., 238 F.3d 20, 24 (1st Cir. 2001), and begin by looking briefly at the crowded landscape of discrimination cases.

These cases fall into two general categories. The more common genre involves evidence of discrimination that is circumstantial. In such cases the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), applies. For our purposes, it is enough to say here that after plaintiff and defendant bear their preliminary burdens, plaintiff bears the ultimate burden of proving that the alleged discriminatory action was the determining factor in an adverse employment action.

The second and less common type involves direct evidence, evidence that unambiguously implicates an age discrimination motive. Where such evidence exists, a mixed-motive analysis applies; that is, a plaintiff's burden is tempered so that she need prove only that the discriminatory action was a motivating factor in an adverse employment decision.[1] The defendant then may "assert

---

[1] We need not get into the question of whether mixed-motive analysis is available on strong circumstantial evidence of discrimination. See Weston-Smith v. Cooley Dickinson Hosp., 282

-5-

an affirmative defense, bearing the burdens of production and persuasion that it 'would have taken the same action in the absence of the impermissible motivating factor.'" Weston-Smith v. Cooley Dickinson Hosp., 282 F.3d at 64 (quoting 42 U.S.C. § 2000e-5(g)(2)(B)).[2]

Direct evidence, which "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision," Febres, 214 F.3d at 60, opens the door to a mixed motive analysis. The high threshold for this type of evidence requires that "mere background noise" and "stray remarks" be excluded from its definition. Id. at 61; see also Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580-81 (1st Cir. 1999) (concluding that the owner's statement that he did not "need minorities . . . on the job" could have been either discriminatory or a response to what "he perceived as an unjustified attempt to impose some sort of quota system upon his company"). "A statement that can plausibly be interpreted two different ways -- one discriminatory and the other benign -- does not directly reflect illegal animus, and, thus, does not constitute

---

F.3d 60, 64 (1st Cir. 2002). For present purposes, we will deal with the case in terms of direct evidence. There was no strong circumstantial showing of discrimination here.

[2] This circuit has noted, but not resolved, the question of whether that portion of the 1991 Civil Rights Act which amended Title VII to provide for limited relief against defendants who would have taken the same action even absent their discriminatory motive, see 42 U.S.C. § 2000e-5(g)(2)(B), applies to cases under the ADA. See Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 42 n.6 (1st Cir. 1998). Giving plaintiff the benefit of the doubt, we assume arguendo that the 1991 Act standards would apply.

direct evidence." Id. at 583. Hence, "direct evidence is relatively rare." Id. at 580. To be sure, that burden is not insurmountable. For example, in Febres, we concluded that plaintiff presented direct evidence where an employer's criteria for an employment decision involved "job performance, union identification, and 'in some cases, the age.'" 214 F.3d at 59.

Patten argues that the two sets of comments by her supervisors referring to her disability, see supra at 3-4, constitute direct evidence and thus take her out of the McDonnell Douglas framework. None of these statements constitutes direct evidence, however. Our standard for direct evidence requires statements that are not "inherently ambiguous," Fernandes, 199 F.3d at 583. We require statements that give us a "high degree of assurance" that a termination was attributable to discrimination. Id. at 580. Neither of the sets of statements in this case meets this test. Both are subject to the interpretation that management fully understood that appellant had a disability but could not further abide appellant's gross and repeated absenteeism. A decisionmaker's mentioning of a disability in the context of an adverse employment action cannot, without more, constitute direct evidence of discrimination.[3] Cf. id. at 583.

---

[3] Given our determination that no direct evidence was presented here, we need not consider appellee's contention that appellant waived her right to appeal on this issue by failing to object to a portion of the magistrate judge's recommended decision. See Seahorse Marine Supplies v. P.R. Sun Oil Co., __ F.3d __, 2002 WL 1431766, at *14 n. 15 (1st Cir. 2002).

Appellant alternatively requests that we do away with the distinction between circumstantial and direct evidence, and instead

B.    Exclusion of the Maine Human Rights Commission's Finding of
      Discrimination

Appellant also assigns error to the district court's refusal
to admit into evidence a right-to-sue letter from the Maine Human
Rights Commission ("MHRC").  At the outset, we must determine the
proper standard of review for the district court's exclusion.
Appellant contends that because the district court routinely
excludes MHRC right-to-sue letters from the jury's purview, its
decision applying that practice here must be reviewed de novo.  For
support she cites <u>S.E.C.</u> v. <u>Sargent</u>, 229 F.3d 68, 79
(1st Cir. 2000), in which we noted that "the interpretation of the
Federal Rules of Evidence is a question of law which we review de
novo."

Appellant's argument is flawed in that the district court's
exclusion did not involve an interpretation of those rules.  We
cannot discern a material difference between the district court's
practice of excluding these types of letters in other cases and its
decision to apply that practice here.  At bottom, the question is
one of relevancy and prejudice under Rule 403,[4] and it is well-
settled that abuse of discretion is the proper standard to be
applied to such issues.  <u>See</u>, <u>e.g.</u>, <u>Gen'l Elec. Co.</u> v. <u>Joiner</u>,

_____

employ a single standard of proof for all evidence.  Although we
are not unsympathetic to the plight of a civil rights plaintiff
attempting to prove her case, the abundance of caselaw in this
circuit requires that we do not reconsider that duality here.

   [4]  Rule 403 allows a court to exclude admissible evidence that
is more prejudicial than probative.  <u>See</u> Fed. R. Evid. 403.

-8-

522 U.S. 136, 141 (1997); <u>United States</u> v. <u>Bradshaw</u>, 281 F.3d 278, 284 (1st Cir. 2002).

The MHRC right to sue letter pertinently stated:

> The Commission has conducted an investigation of the . . . complaint of discrimination and has determined that there are reasonable grounds to believe that unlawful discrimination has occurred. The decision was based on information received during the course of investigation of the complaint including the Investigator's Report, any written submissions, and any oral presentations made.

> Pursuant to § 4612(3) of the Maine Human Rights Act, the Commission will endeavor to resolve the reasonable grounds determination. A proposed Conciliation Agreement will be forthcoming from the Commission's Compliance Officer. If no settlement is reached, the Maine Human Rights Act authorizes the filing of a civil action in Superior Court. * * * The Maine Human Rights Act provides that you may pursue this matter on your own.

Appellant asks us to adopt a rule that "reasonable grounds findings from the MHRC are per se admissible." For support, she cites <u>Plummer</u> v. <u>Western International Hotels Co.</u>, 656 F.2d 502, 505 (9th Cir. 1981). The Ninth Circuit's determination of per se admissibility of EEOC determinations cannot be squared with our precedent. In <u>Smith</u> v. <u>Massachusetts Institute of Technology</u>, 877 F.2d 1106, 1113 (1st Cir. 1989), we considered the admissibility of EEOC findings, and agreed with the Seventh Circuit that "a rule of per se admissibility of the investigative file would clearly undercut the district court's function as independent fact-finder. The better approach is to permit the district court to determine, on a case-by-case basis, what, if any, EEOC investigator materials should be admitted at trial." <u>Id.</u> (quoting <u>Tulloss</u> v. <u>Near N. Montessori Sch.</u>, 776 F.2d 150, 154 (7th Cir. 1985). Moreover,

Smith concerned the admissibility of an investigative file, containing statements and other evidence of the alleged discrimination. Here, the right-to-sue letter states only a conclusory probability of discrimination, unsupported by any relevant facts, and thus on its surface lacks the probative content of the excluded investigative file challenged in Smith.

The district court's routine exclusion of the MHRC letter is consistent with Smith's stated approach. It seems to us that the district court's exclusion reflects a tacit balancing under Rule 403. See United States v. De La Cruz, 902 F.2d 121, 123 n. 1 (1st Cir. 1990). Although the findings of a fact-finding agency are entitled to deference, see Blizard v. Fielding, 572 F.2d 13, 16 (1st Cir. 1978), we cannot say that the district court abuses its discretion when it concludes that such an agency determination, unaccompanied by relevant facts, tends to be more prejudicial than probative.[5]

Affirmed.

---

[5] Appellant alternatively argues that even without a per se rule, the district court's exclusion of the MHRC letter constitutes reversible error. Appellant does not explain how this letter, if admitted, would have changed the jury's outcome. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").